...constituted an act of a pattern of practice of resistance to the free exercise of individual's rights under Title VII. We brought this cause of action pursuant to our authority under Section 707A of the statute. And in the District Court, the Court agreed with the Commission that we had satisfied all the necessary prerequisites to this suit. And the Court also agreed with the Commission's argument that we had a proper cause of action for this claim under Section 707A. The District Court did not agree, however, with our interpretation of the agreement and concluded as a matter of law, essentially, that this agreement could not be interpreted to constitute resistance or interference with individual's charged filing rights. And we think that was error on this record, Your Honors. Why don't you first touch on the mootness issue now? We have a 2015 agreement and Doherty no longer requires that or no longer prohibits its employees from filing charges. That's correct, Your Honor. Is that right? That's correct. Why is this case not moot now? Well, to go specifically to the point of why there's still a law of action here, I'll come back to this Court's standard for assessing mootness. But specifically, the key facts here are the fact that there are remedial issues that are not resolved by Doherty's conduct in changing the arbitration agreement in 2015. First and foremost, there are still individuals, we presume, who are present who were affected by this agreement from 2013 to 2015 who were presumably, again, precluded from being able to file a charge of discrimination with the Equal Employment Opportunity Commission. If they understood this agreement as we've argued, the agreement would have precluded charged filing and therefore these folks haven't had a chance to present their claims to the Equal Employment Opportunity Commission. Now this is a problem not only for these individuals and their individual indication of their rights but also to the proper functioning of the Equal Employment Opportunity Commission. What would be wrong with waiting for one of those people to appear and when they appear, deal with it then? Our problem, again, Your Honor, is based on our understanding of the agreement. I think that the facts support at least a reasonable fact finder concluding that this agreement did constitute an interference with charge filing rights. It did inform individuals that they were unable to file charges. If someone is following that agreement, they won't appear by definition because they believe that they can't file a charge. So there is no one to appear. There's no basis for them if they understood the agreement as we believe it reads. Again, by its plain terms. So the way you hope this will work is we issue a ruling that says this was a problem. That ruling is known to the world in what you notify all employees and then they bring their charge at that point? At some point, Your Honor, we would think that if this case was to go back to the district court and we had a ruling in our favor on the pattern of practice, the commission would then be able to get information on applicants as well as employees and find, as we do in larger cases typically, and try to find some way to contact them and inform them that they would have a right to file a charge if they believe that they should have been able to under the 2013-2015 period but were precluded because of the agreement. I can't do that anyway. In other words, you don't need a decision from the 11th Circuit. You just send some information to all employees. I mean, the companies admitted they could file charges. Employees did file charges. That's right. If your concern is an information problem, who needs a lawsuit? Just give them the information. It's not only an information problem, Your Honor, but specifically to your point, unless Doherty has agreed to waive the defense of timeliness to such charges, those folks are out of luck because even if they do come forward now, they're out of time. So our request is part of the relief we've sought from Doherty in this case is to have a waiver of the time fine so that these folks would actually have a meaningful opportunity to present their claim. Otherwise, we could wait for them to show up and then there's an easy defense, and that case goes by the wayside regardless of its merits. Again, and to be specific as to the arguments in this regarding mootness, I just want to note again that while Doherty responded on appeal claiming that there's no longer any harm, we disagree with that and that we think that the district court correctly identified the factors in this court's precedent, specifically the Sheely case, and identifying relevant factors that Doherty's conduct did not rise to, did not satisfy in order to constitute the exception of the mootness doctrine under voluntary cessation. I'm sorry, Your Honor. Why don't you move on to the merits of the 2013 mandatory arbitration? Absolutely, Your Honor. The key issues with that agreement or disagreement with the district court's resolution of that is its interpretations of the term resolve and the way it looked at determine in the agreement to simply refer only to ultimate adjudicatory type resolutions of claims. As we've argued in our brief, the Supreme Court and this court have long recognized that the primary function of the EEOC under Congress's intent behind Title VII's administrative process is to resolve charges of discrimination. Would we be the first court in the country to say that Congress authorized the Equal Employment Opportunity Commission to bring a Title VII claim against any company in the country without a claim of discrimination by an applicant or an employee? It would not be that, Your Honor. One of the courts, now you'd be the first court of appeals to have done that because this question hasn't been squarely presented other than in one of the cases. First court of appeals. First court of appeals, Your Honor, that's correct. The Kluge-Klan case from the mid-1960s, the district court recognized that Section 707A allowed the government to bring any claim against any individual under Section 707A as long as that any claim regarding conduct that interfered with or reached individuals' exercise of their Title VII rights. The only specific prohibitions in Title VII are against the unlawful employment practices of discrimination and retaliation. That's correct. So how do you get from there to other rights that Title VII guarantees? Well, other courts have recognized that there is a right to file a charge under Title VII and we identified the Fifth Circuit's decision. But isn't that just a procedural mechanism, the filing of a charge? Well, it is, but it's nevertheless a right, and most importantly, Your Honor, it's a critical right to the proper function of Title VII because the statute cannot function properly as Congress intended with the EEOC receiving charges of discrimination, processing those administratively, attempting to resolve them informally without there being a charge that's filed. It absolutely forestalls the process at the gate if an individual does not have the right to file a charge of discrimination. There's no limiting language in the statute that suggests that the ability to file a charge is anything short of a right. There's no indication in the regulations and in no other decision has a court of appeals or otherwise come to that conclusion, Your Honor. The agreement itself, it doesn't say that an employee or an applicant cannot bring a charge of discrimination against the EEOC, does it? No, it does not, Your Honor. What it says is, and I'll attempt to keep it as short as possible, it's a little bit, there are a few phrases that come together in this. First of all, it identifies any claims against Duarte. It identifies specifically that category of claims as including Title VII discrimination claims. Then it says Title VII claims which could be, which the individual could seek to take to a governmental dispute resolution forum. That, by its definition, refers to the Equal Employment Opportunity Commission and agencies similar to a due process. No one would think an agreement between an individual and the company would be waiving the right of an agency to bring a charge. So you agree that it obviously isn't waiving the right of the EEOC to bring something. And when a charge is filed, it allows the EEOC to bring the charge in its own name, right? So it's just, I don't understand, it just seems like such a lead to take this contract between two people to affect the rights of a third entity. That's the part that's really hard for me to understand. I want to come back to your concern, Your Honor, but first, if I could finish with Judge Wilson, because the key part of the language in the agreement that gets to this point is that it identifies the category of claims, that is, things under Title VII you could take to a governmental dispute resolution forum. Those are claims which shall be submitted and determined exclusively by binding arbitration. It requires determination exclusively and submission exclusively. And we have witness testimony that not only was this what was understood under the agreement, but this is what Doherty affirmatively told individuals. If I could read from Mr. Puerto Rico's statement. He said, quote, We were told that all claims had to be filed through Doherty, and that is the only option. We were also told we were not allowed to file any claims outside of Doherty because of the arbitration agreement we were all required to sign. And, 13, I did not complain elsewhere, including at the EEOC, because I was told that all claims had to be filed through and with Doherty. Now, Your Honor... But what if the best reading of this is it doesn't apply to charges? I mean, we have an interpretation of the contract, and we say it just doesn't apply to charges. That takes care of that problem. Respectfully, Your Honor, I'm not sure if I understand the point you're making. In other words, we interpret it the way the district court interpreted it. Yes. We say it's not moot. We give this interpretation. What's the problem? The problem is that this isn't the way that we believe that a reasonable fact finder could conclude this agreement reads. This isn't the intent that we believe a reasonable fact finder could take away from it. So this is a case where it doesn't matter what the best reading of it is, it matters what's a possible reading of it? Well, I think that's correct on summary judgment, Your Honor, because that is what we're talking about is summary judgment. And if it is ambiguous as to which way this could be interpreted, again, we've identified in our brief, and I've discussed here briefly... Why won't you take yes? I'm sorry? Why won't you just take yes for an answer? I'm not sure... In other words, we interpret it the way you want it to be interpreted. I'm sorry. I didn't understand that to be your point, Your Honor. So it comes out, it doesn't apply to a charge. That's a win in a sense. So in other words... I'm not trying to be obtuse, Your Honor. No, no, no. I'm just making the point. What's funny about this case is from my perspective, the best reading of it is not to apply to charges. That's the best reading. And that's what the district court said. You get that reading, and that's good for you. You haven't been waiving rights that they should not be asking them to waive, and that's why I say, why can't you take yes for an answer? If that was, in fact, the correct reading, and if that was, in fact, the best reading of it, that, in fact, this wasn't having the effect that we're concerned it was having, that would be a win for everyone. Our concern is that that's not the best, not the only reading, and a reasonable reading is susceptible to interpretation we're providing. And, again, it's not just our reading of it. We've actually provided a witness, a general manager from a restaurant of Doherty's from 2013, who said this is exactly what they were told. All right. Mr. Tucker, we have your argument, and you have reserved some time for rebuttal. We'll hear from Ms. Calo. Thank you. Good morning, Your Honors. May it please the Court. My name is Dina Calo, and I, along with my colleague, Antoinette Theodosakis, are here representing the Doherty Group. Certainly, this case is a pattern and practice case under 707. And under 707, the EEOC must do more than point to, as they have done in the argument, one isolated incident. This is not about one isolated incident. It is also not about a claim of resistance that has never before been found by any court to be a claim. It must be about discrimination or retaliation. Can you just address mootness first? Sure. Let's say you get a judgment in your favor, in favor of Doherty. Can you, in a few months, just reinstate that prior mandatory arbitration agreement? We have indicated in the course of litigation that we would not do so. It was four and a half years that the new arbitration agreement has been in place. The intent of the organization through deposition testimony, the executives have stated through depositions that their intent was always to allow individuals to file EEOC charges. At every store location is the required poster, which gives the information for the EEOC. This agreement was never directed toward the EEOC. Doherty never defended any charge by saying, here's the arbitration agreement. No employee can file any EEOC charge. There's been no evidence, in fact, in this case, that Doherty ever in any way intended to prevent any individual from going to the EEOC. Their concern as to why it's not moot is this problem of someone coming up and its statute of limitations now applies, they can't bring a charge. Would you waive toll the statute of limitations for those individuals at this point? The problem with doing that, and I want to go back to when Doherty received the reasonable cause finding, was no pre-suit procedures had been filed. Doherty was surprised at that time. In order to resolve and conciliate the matter, EEOC demanded that we do it publicly. Back in 2014, when we first received this reasonable cause assertion, without investigation, without a charge, without conciliation, that would have been the time in a restaurant organization that has 100% turnover, where evidence now, six years later, may be gone. Just to cut to the chase, if you're not willing to toll, doesn't that show that this isn't moot? We don't believe so because now, six years later, we have provided all the information to these individuals who in fact have never been resisted from anything. If they have never been prevented from going to the EEOC from the beginning and frankly could have gone to arbitration if they believed that they had suffered any sort of discrimination or retaliation, they had many places to go. The more unlikely it is that anybody is out there who has a charge complaint, the more reasonable it is for you to say, of course we'll toll it because they don't exist. You have to pick one side of that or the other. I suppose, but at this point, they're looking for an injunctive relief to resolve discrimination that's only hypothetical.  that Doherty never prevented anybody from reserving their rights. This arbitration agreement does not take any rights away from any individual. If the individuals had the opportunity to go to arbitration, to go to the EEOC, to go to any forum they wish to resolve their rights, and now they are saying to us, we had to at that time, or at this time, now six years later, toll in order to develop mootness, we still don't think that the issue is right. With regard to the agreement itself, the agreement is clear and unambiguous. It does not address the EEOC or charge filing in any respect. Clearly, there can be no doubt that Title VII claims are subject to arbitration. What about the language, resort to any government dispute resolution forum? Couldn't that be EEOC? It cannot, Your Honor, because the EEOC is an investigative entity pursuant to Title VII. It cannot issue any final resolution. It cannot come to any determinations. It cannot grant relief. Can it do conciliation? But conciliation is voluntary. The parties come together in a conciliation process and voluntarily decide whether they want to settle a dispute. When conciliation fails, at that point, the case goes to a court and then starts fresh. The EEOC, unlike the NLRB, for example, cannot make back pay awards. It cannot make awards of any sort. Its job at the agency is to investigate claims. We're looking at the agreement as we're trained in the law and we're lawyers and judges. The issue is whether or not the layman, whether or not a reasonable employee would construe this agreement as prohibiting them from filing a charge of discrimination. It seems like that's an issue that ought to be resolved by the fact finder that maybe a reasonable employee would think that they can't file a charge of discrimination because the language here in this 2013 agreement is pretty strong. I have two issues with regard to that, Judge Wilson. The first is that the reasonable person standard is an inappropriate standard to use when you're looking at Title VII claims. Title VII requires intent and there's no case that's been cited under Title VII that allows a reasonable person standard, especially in a pattern and practice case. Under 707 pattern and practice cases, the EEOC must establish that they already had the intent to put out this arbitration agreement and to discriminate or retaliate. We're talking here about this term resistance, that it used this agreement to resist Title VII and we're assuming that resistance is, in fact, an independent cause of action. With regard to what... You're saying, I just want to make sure I'm clear on this, you're saying that we don't look at how a reasonable person would understand this agreement that Doherty put in front of them. That's not the standard? I would agree with that. I believe that the standard pursuant to the case law and pursuant to the statute itself is that we have to look at the intent of the parties of Doherty when it put out this agreement and whether it intended to violate the law in doing so in a pattern and practice case. Here, when you look at what Doherty's intent was, we can look at what the information it put out about arbitration and about its arbitration agreement. It told... The training it gave to managers was that arbitration was a substitute for court. And at each of its locations, it put out information about the EEOC. If you believe you're suffering from discrimination or retaliation, here's information about the EEOC. That's required by Title VII. Those posters are at the location. The employees see those posters every single day. So that is what Doherty intended through the agreement was just to require that if an individual has an employment dispute, that that employment dispute be resolved, binding resolution through arbitration. Would you respond to Mr. Tucker's argument that the agreement says that all claims, basically, including Title VII claims, shall be submitted to exclusively arbitration? Sure. The ultimately submitted to arbitration certainly means that that's what the expectation is, that if they're going to be resolved or submitted to any forum, that that will give them a remedy, that will give them a determination that that will be an arbitrable forum, will go to arbitration. EEOC cannot do that. And frankly, the choice is up to the employee. The employee has, when it enters into this agreement, it has the choice to go to the EEOC or to go to arbitration if it wishes to do so. That's the agreement that the employee made with the employer. Before an employee goes to federal court, for example, it must go through the administrative remedies, right? But it does not have to do so before it goes to arbitration. It can decide. We, as Doherty, my client, has not ever used the arbitration agreement as a defense at the EEOC. It has never said to the EEOC, for example, you cannot communicate with any of our employees. It has never intended to limit an employee's communication with the EEOC in any way. And in fact, the way that the EEOC learned about this agreement was by a charge that was pending at the EEOC at the time that it learned about it. Let me ask you this question. Of course. Not the EEOC. Can the attorney general bring a pattern or practice lawsuit against the company with a mandatory arbitration agreement like this in the absence of a charge of discrimination by an employee or an applicant? Well, currently, the attorney general only has the right to bring claims against public entities. So when the right was transferred to the EEOC, it was transferred under 707C. And what 707C says specifically is that when the transfer occurs, it occurs pursuant to D and E. Now, in E, in the statute, that specifically says that when the EEOC takes over that pattern and practice right, it does so pursuant to all of the investigation, charge, and other prerequisites set forth in 706. Those did not happen in this case. So those procedural failings, the EEOC did not meet before it brought the case that we have here. Why aren't we bound by our prior decision, our Fifth Circuit decision in, what is it? Allegheny-Ludlam, sir. Allegheny-Ludlam. You don't need a charge of discrimination in order to bring a claim under this provision, Title VII. So there are a few reasons that we are not bound here by Allegheny-Ludlam. The first is that Allegheny was a case where there were charges of discrimination. It was brought by the government, by the Attorney General. And thus, Allegheny-Ludlam falls under 707D, which is the case was transferred to the EEOC, but it had started with the Attorney General, number one. Number two, it was an intervention case. So the analysis in Allegheny-Ludlam was looking at whether the National Association, the National Organization of Women, could in fact intervene in a 707 pattern and practice case and whether all the attendant prerequisites were required. Ultimately, what the court was looking at was whether in a 707 pattern and practice case intervention was required. It said no. And in the language of Allegheny-Ludlam, the court specifically held that, in fact, the prerequisites in 706 were required. Shell Oil came, which is a Supreme Court case, came long after Allegheny-Ludlam, 1984. Shell Oil specifically goes through the prerequisites required for 706 and 707 cases. Ultimately, Shell Oil specifically sets forth what gives the EEOC authority to sue. Shell Oil says that a charge must be filed before any authority is given to the EEOC. It cannot act. It has no plenary authority. What do you think the word resistance means in A, in 707A? What's going on there? What's the point of that word? So pattern and practice cases are those where you have either a group of entities who are resisting the rights under Title VII, discrimination and retaliation, or you have one entity who is discriminating against a broad group of people, resisting Title VII as a whole. So that's what, if I read, and the analysis I've seen in the case law... Why didn't they use that word in E? Why didn't they use that word in E? Because E is just transferring the authority to the EEOC and basically stating that the EEOC, once it gets that authority, ultimately, here's what happens. So I want to back up for a minute. So before the transfer of authority, the Attorney General did not have to file charges. It had no investigative authority. The way the EEOC does, it could just go into court and file suit. EEOC could not go in and file suit, right? It had no authority in that way. So when the transfer of authority happened, what Congress did is it gave the EEOC the authority to, in fact, investigate pattern and practice charges. It had to do that. It had no authority to do that in any of the other provisions of the law. And so E transfers that authority to them, and it says, look, you are going to, EEOC, have the right now to investigate pattern and practice charges. When you get that authority, you have to do it pursuant to 706. You have the, you must charge, investigate, give notice, conciliate, and once you do all those things, pursuant to shall oil, you then have the right to file suit. And it's clear and explicit in 706, I'm sorry, 707C and 707E. So how would it work now? An employee at Doherty would go to the EEOC and say, I haven't been discriminated against with regard to, you know, the terms or the conditions of my employment, but I'm discriminated against because I'm required to sign a mandatory arbitration agreement. Then the EEOC would investigate and make an effort to conciliate. Is that what you're saying? If we interpret the statute the way you want us to interpret the statute? I think the way that you've just described it, Judge Wilson, is really a 706 charge. I don't believe it's a 707 charge. 707 charges are saved for pattern and practice cases where the commission finds that, in fact, so let's take this case. In this case, there was a charge pending. The EEOC learns of the arbitration agreement through the investigator. The investigator sends it to the EEOC's legal office. If they've determined that, in fact, that has a violation of Title VII, the commission on its own could have and should have, in this case, filed a charge that could have been investigated. As that investigation's happening, they come to Doherty and should have and said, hey, we believe this is a violation of the law. Let's conciliate it or give you notice. What's the investigation going to look like? And then we could have conciliated. That's what I'm getting at is... It seems as if Congress is making it illegal for a company to require its employees to sign an agreement waiving all of their Title VII rights. Am I misinterpreting the statute that way? Why isn't that a proper interpretation of this statute? Of 707? 707A. 707A doesn't... I don't believe it's directed to the waiver of rights necessarily. It's directed to the pattern and practice of discrimination... The pattern and practice of resisting any right under the statute, which is discrimination or retaliation. You can have a contract that potentially waives rights if you give consideration for that contract. You can give a contract that's an arbitration agreement... You can waive rights. Maybe Congress is saying you can waive rights that you have as an employee with your employer as long as you don't waive your right to be protected from discrimination in the workplace. If I'm understanding Judge Wilson's question, I thought what he's trying to get at is what happens if you win? In other words, you're right here. What happens next? Because I think everyone agrees that you can't have waivers of the right to talk to the agency. The company and the individual can't waive the EEOC's right to investigate. So what I understood him to be asking is, if you win, what happens next? And I thought the answer would be, yes, people can still go to the EEOC, still can say what is happening at the company is wrong, or they really are trying to get us to waive our rights to file charges. They would investigate. And if it satisfied the requirements of a retaliation or discrimination claim under Title VII, the EEOC marches forward and Doherty's in trouble. And I'm over my time. May I continue? So absolutely, Judge Sutton. Here, Doherty has never prevented anybody from going to the EEOC and never intends to prevent anybody from going to the EEOC. Even if they win, they can still go. Of course. As long as they find retaliation or Title VII discrimination, the EEOC could bring claims, charges, whatever. And has. I mean, there has not been a situation, and we don't believe there would be a situation, where anyone has been prevented from going to the EEOC or communicating with the EEOC, if that's the route the employee chose to take. We're still bound by our Fifth Circuit decision in Allegheny-Ludlam. So I do not believe that Allegheny-Ludlam says what the EEOC says it says. It was one line in dicta related to an intervention case. And if you read the remainder of that decision, I believe that decision specifically says that 707E, remember that was so early on, 707A and the Attorney General's right did not have to bring a charge. So where Allegheny-Ludlam specifically said it, and if 707A you don't have to bring a charge, well, the Attorney General didn't have to bring a charge. As you move to C and E, in fact, those procedural requirements are explicit, they're in the statute, and if we believe that Allegheny-Ludlam stands for the proposition that a charge needed to be filed, I believe that that was cleared up by the Supreme Court in Shell Oil. Thank you very much for your time today, Your Honors. Thank you, Ms. Calo. And Mr. Tucker, you've reserved some time for rebuttal. Yes, Your Honor. Very quickly, to the point about Allegheny-Ludlam and General Telephone, specifically General Telephone, the Supreme Court, several years after Allegheny-Ludlam, reaffirmed exactly what Allegheny-Ludlam said, which is that the EEOC inherited exactly the same authority that the Attorney General had prior to the enaction of the 1972 amendments to Title VII, exactly the same authority. The Supreme Court said that. Part of it is that EEOC must follow the conciliation procedures in 706B. Did that happen? 706 or 707C says that, if I may, Your Honor, the Commission shall carry out functions in accordance with Subsections D and E of this section, referring to passing over authority from the Attorney General. Subsection E says the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination. All such actions shall be conducted in accordance with the procedures set forth in Section 706. That's a reference specifically to situations where a charge has been filed that the EEOC may pursue a pattern of practice and process that charge as it would under 706. It does not say that... You have to do conciliation. It does not abrogate the requirement under 707A that there not be any charge or any other requirements attended other than the finding of reasonable cause. Conciliation itself, Your Honor, is a creature of Section 706. It is specific to Section 706, refers to the requirement of what the Commission must satisfy after coming to a reasonable cause of termination after an investigation. It must endeavor to resolve through conference conciliation or persuasion. It is not a freestanding requirement that can be inserted into the statute wherever it's seen fit. The Supreme Court has recognized in Nassar recently and in other contexts that Title VII is an extremely complicated and intentionally devised statutory scheme and that interpretations should be given to the plain meanings of the terms. To talk a little bit more about Allegheny v. Ludlam, I want to be clear again. There is no reference in Allegheny v. Ludlam to 706 conciliation requirements applying under Section 707. We dealt with this in our reply brief, Your Honor. I request you take a look at that again. The key is that when the Court did discuss briefly conciliation under 707, it discussed, again, something in context of 707E when a charge had been filed. And Allegheny v. Ludlam was clear that it was basing its interpretation of the question at issue regarding intervention on its interpretation of Section 707, Section 706, and the legislative history behind each of them and the distinctions between each of them. It wasn't simply a passing comment in one line about the requirements under Section 707. It was key to the holding. The Court does say in Allegheny that the case didn't require the Court to determine the, quote, intricate questions, end quote, of whether suit under 707A requires the procedures in 706 to be followed. It said specifically, Your Honor, again, what I don't have the case with me right here, but what it did say, again, was when it was discussing that point you're talking about, it was responding to an argument by the appellant that the EOC had failed to conciliate the charges at issue in that case. And the Court's context then is whether or not under Section 707 there was a conciliation requirement. It wasn't dealing with that question in the context of when a charge was filed. It was not making the broader statement that 707A required a charge of conciliation. I had a number of other points I'd love to respond to, but if I could reach back to you. I guess, again, Your Honor, Your Honor, when you were asked, prior, about whether or not the language of submitted arbitration, whether or not it required all claims to be submitted to arbitration, the agreement, you didn't get an answer from Doherty. I think it's because the text of the language is clear. It did require all claims under Title VII to be submitted exclusively to arbitration. That's the crux of the problem with the agreement, and as I read to you from the witness testimony, there's also evidence that this is exactly how this was communicated to individuals in the field. That's evidence that a reasonable fact finder could base a conclusion on that Doherty was, in fact, engaged in a pattern of practice of resistance under Title VII. Are there no further questions, Your Honor? I see no further questions. Thank you, Mr. Becker. Thank you. Ms. Kalem.